OVERTON, J.
The city of New Orleans, under Act 69 of the General Assembly for the year 1916, and in accordance with Ordinances Nos. 5595 and 5602 of the commission council of the city, let a contract for the paving of South Peters street from Canal to Thalia streets, and for the installation, in connection with the paving, of subservice drains, gutter bottoms, etc.
Relator is the owner of property abutting the improvement. After completion of the work, the city sent to relator paving bills amounting to $6,583.48. Relator sent a check to the city, for this amount, but the check was returned for the reason that it did not include all of the interest claimed -by the city. According to the view of the latter, the indebtedness, including interest, amounted to ,the sum of $7,072.85, instead of $6,583.48, making a difference in amount claimed of $4S9.37.
The difference between relator and the defendants arises from a difference of view as to when the interest begins to run. According to the view of relator, it begins to accrue from the delivery to the property owner of what it terms the “certificates,” and accord-, ing to the contention of defendants, relator is confusing the paving bills which are delivered to the property owners, at the completion Of the work, with the certificates issued before the work is done, and sold by the city, in order to raise the funds with which to pay the contractor.
Relator contends that if the defendants are correct in their construction of the act of 1916, or, in other words, that if the act of 1916, or any one of its subdivisions, justifies the exaction of interest from any other date than from the delivery of what it terms “certificates,’! that is, the paving bills, to the date of payment, then the act or any subdivision of the act that may justify the exaction is in conflict with article 1 of the Constitution of this state and with the Fourteenth Amendment to the Constitution of the United States, in that the effect of the act, or of such subdivision, would be to take from relator his property without due process of law; and, in such’ event, relator pleads the unconstitutionality of the act, and of any subdivision of it that may be construed as justifying such an exaction.
Relator, to obtain relief from the '-refusal of the officers of the city to' accept, on behalf of the inunicipality, the amount tendered by it, prayed that a writ of mandamus issue commanding the city, through its mayor, and the commission council thereof, as well as the department of public finance, to accept said sum of $6,583.48 in full settlement. of said paving bill, or show cause to the contrary on such day as the court might fix.
Defendants filed an exception of no cause of action, which was maintained by the lower court, and relator has appealed.
Act 69 of 1916, under which the pay *847 ing was done, is an amendment of the city-charter. The plan adopted by the act contemplates that the ■ city shall provide in advance a fund with which to pay for the work. This appears from section 47 of the act, in which it is provided that—
“Not later than November 15th of each year the commissioner .of public property shall furnish the commission council and the commissioner of pubhc finances an estimate of the cost of the paving and repair of streets to be executed during the succeeding year.
“After the receipt of such estimate of cost, the commission council shall by ordinance authorize the issuance of certificates to an amount equal to said estimate of cost, and shall direct the commissioner of pubhc finances to advertise and sell said certificates, by sealed proposal, to the highest bidder.”
The act then, after providing that the certificates may be sold at one time to one or more bidders, or at different times, in installments, as the commission council may elect, provides that—
“Paving certificates of indebtedness shall not be sold for less than ninety-five (95i%) per cent, of their par value; they shall bear four and a half (4%) per cent, per annum interest from the first day of January of the year of their issue until paid; and said interest shall be paid semiannually on the first of July and the first of January of each year, on detachable coupons. Par value, as used herein, shall mean principal and interest accrued to date of delivery.”
In the above manner,-a fund is raised by the city with which to pay for the work. As the city is liable to the holders of the certificates issued by it, provision is made to enable it to.pay the certificates, including the interest thereon^ by levying assessments against the property, abutting the improvement; and accordingly, when the work is completed, and when the cost due by each proprietor has been ascertained, in the manner provided by the act, the commissioner of public property is required, as provided by section 48 of the act, to issue a statement of assessments, in which he is directed to give briefly a description of the property assessed, the names of the proprietors,-as shown by the ássessment rolls, and the amount of the portion of the cost of the paving due by each piece of property abutting that part of the street improved, and is directed to add “five per cent, per annum interest upon each assessment from the date of the delivery of the certificates described in section 47.”
Erom the above provision in section 48, relative to interest to be paid by the property owner, it appea-rs that interest runs from the date of the delivery of the “certificates described in section 47.” The only certificates described in that section are those based on the estimate of the amount required for street improvements for the succeeding year, which the city is directed to issue and sell, in order to make provision for paying for the work. Likewise, it is provided in section 46 of the act, which regulates, in part, the assessment and the payment of the cost of paving, that the interest on all deferred payments shall be computed from the date of the delivery of “the certificates provided for in section 45.” It is true that the act here says “section 45,” instead of section 47. ^However, the reference to section 45 is a manifest clerical error, and instead, section 47 was” intended, for there is no provision relating-to certificates in the former section; whereas, in the latter, there is, and that section, is the only one in which such provision is made.
We therefore conclude that the interest, under the statute, should be computed and collected from the date of the delivery of the certificates issued and sold by the city for the purpose of providing a fund with which to pay for the work, and not from the presentation of the paving 'bill to the property owner.
As we have seen, however, relator contends that in the event of such a construction, the statute, or that part of it, which authorizes the interest to be so computed, is uncon *849 stitutional in that it deprives him of his property without due process of law.- We gather from relator’s contention, in his brief, that the action of the Legislature, in providing for the payment of the interest from the date of the delivery of the certificates to the purchasers thereof, instead of from the completion of the work, is nothing more than requiring him to pay interest on a 'debt before the debt comes into existence, and if maintained', is unjust, and amounts to a confiscation of property. A¥hile relator, in its brief, speaks of a confiscation of property, yet it is not made to appear from its petition that the exaction, as to interest, makes the assessment, as a whole, substantially exceed the benefits to its property, but only that there is no basis on which the Legislature could rest such an exaction, and hence that the action of the Legislature, in this respect, was arbitrary, and has the effect of depriving relator of its property without due process of law.
We are, however, unable to agree with relator. The plan on which the paving act is .based, as heretofore stated, is to provide a fund, in advance, with which to pay the contractor. This enables the city to have the work done at a more satisfactory price than it otherwise would be in position to dp, and though the plan involves the payment of interest by the city, yet it works to the advantage of the property owner. The interest that the property owner, is required to pay, from the time the certificates are sold and delivered to the time fixed in the statute, is á part of the cost of the improvement, as much so as any other part of that cost, and is intended to reimburse the city for its outlay in paying interest that is only a part of the cost. Such being the case, we conclude that the requirement complained of, as to the payment of the interest' by the property owner, is constitutional.
In so saying, we may add that it is true such a paving act might be so abused, in putting it into operation, as to make the interest run for such a time as to entitle the property owner to relief; but the petition in this case, as stated, raises no such issue, but only the issue that the exaction is unconstitutional, under all circumstances, whether the act has been abused by the manner of putting.it into operation or not. Because the act may be abused, or even should it appear, in a given instance, that it has been actually abused and misapplied, is no reason to declare it, or any part of it, unconstitutional, though, as stated, the property owner,'in the event of its abuse, may be entitled to relief otherwise.
The case logically ends here, for as relator’s property is liable for .the interest from the date of the delivery of the certificates, issued by the city, to the purchasers thereof, and as relator has refused to pay that' interest, it is not in position to force acceptance of the amount tendered, as that amount is obviously insufficient to pay the debt.
We may say, however, in conclusion, that, as appears from documents and letters aftached to relator’s petition, the certificates issued by the city were sold and delivered on May 12, 1920. The wofk was completed and the assessments levied in the autumn of 1921. The city demanded of relator interest from May 12, 1920, the date of the delivery of the certificates, to December 31, 1921, the time fixed by the statute. While the rate,of interest charged is not stated, but only the total amount thereof, and while our calculations do not accord exactly with those of the city, yet they sufficiently accord to justify us in concluding that the city’s calculations are based on the rate of 4% per centum per annum. Pour and a half per cent, is the proper rate to charge. It is the rate fixed by the statute, as appears from section 47 thereof, for the city to pay on the certificates issued by it; and is the rate which, under section 46 of the act, is required to be paid by property owners on deferred payments. The state *851 ment of the rate, in section 48, "which the commissioner of public property is directed to include in the certificates of assessment, at 5 per centum, is doubtless a clerical errcjr, for it is inconsistent with the’ rate which property owners are required to pay from the same time on deferred payments, and is inconsistent with the theory of the act. In fact, the error was corrected by Act 103 of 1921, so as to make the rate stated in section 48 harmonize with the rest of the act. As the city was liable on the certificates issued by it, during the period for which interest was demanded, that interest formed a part of the cost of the improvement, and under the statute is collectible from the property owner.
For the reasons assigned, the judgment appealed from is affirmed, at relator’s costs.